# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MAINE

|                          |                                |
|--------------------------|--------------------------------|
| In re:                   |                                |
|                          | Chapter 13                     |
| Samuel J. Nappi,         | Case No. 16-20071              |
|                          |                                |
|                  Debtor |                                |

## ORDER DENYING MOTION FOR
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

     Bangor Savings Bank's displeasure with this chapter 13 case has been evident from the outset. The bank has had two bites at the proverbial apple, one in the form of an objection to confirmation and a second in the form of a motion for reconsideration. [Dkt. Nos. 63 & 98.] Now, citing Fed. R. Civ. P. 52(b), the bank seeks a third bite. [Dkt. No. 115.] The bank's motion for findings of fact and conclusions of law is denied.

     In its objection to confirmation, the bank argued that the lapse of the key man life insurance policy and the debtor's failure to renew or replace that policy "constitute[d] a continuing Event of Default" that prevented confirmation of the Amended Plan. [Dkt. No. 63 at ¶ 17.] The bank's objection did not cite 11 U.S.C. §§ 365 or 1322; that document's sole citation to the Bankruptcy Code referred to section 506(a)(1). [Dkt. No. 63.]

     At the confirmation hearing, the bank's arguments were focused on the value of its collateral. *See* [Dkt. No. 79]. In his closing argument, the bank's counsel cited section 1325(a)(1), section 1325(a)(5)(B)(ii), and section 506(a); he did not cite section 365 or section 1322. [Dkt. No. 79.] Although he mentioned the debtor's assumption of the LLC's obligations, he did so only in the context of noting the continued existence of security interests originally granted to the bank by the LLC. Id. The bank's counsel referred to the key man life insurance as

"part of the collateral[.]"[1] [Dkt. No. 79 at 1:42:45-48.] The bank's arguments were squarely focused on the value of its collateral and the proper valuation methodology considering the continued operation of the restaurant. [Dkt. No. 79.] The debtor's plan was confirmed over the bank's objection. *See* [Dkt. No. 85]; *see also* [Dkt. No. 86].

Unhappy with confirmation, the bank moved for "reconsideration and clarification" of the Court's Memorandum of Decision overruling the bank's objection. [Dkt. No. 98.] In this motion, the bank raised several issues, including the debtor's failure to maintain the key man life insurance policy. Id. At this juncture, the bank argued—for the first time—that the loan agreement between the LLC and the bank was an executory contract that was assumed by the debtor. Id. The bank asserted that the debtor was required to cure the default created by the lapse of the key man life insurance policy. Id. The bank also argued that the policy was necessary to provide adequate protection "on its crammed-down secured claim." Id.

The argument regarding assumption of the loan agreement as an executory contract was not made at trial. As such, that argument was waived. *See* Aybar v. Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997) ("Rule 59(e) . . . does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to . . . advance arguments that could and should have been presented to the . . . court prior to the judgment."). Nevertheless, the Court considered the argument when ruling on the bank's motion for reconsideration. At the hearing on the motion for reconsideration, the following exchange regarding the key man life insurance policy took place:

> Court: Does [the debtor] have to get the policy? Or does he just have to give you the value of the policy?

---

[1] The bank's counsel conceded that the policy had "no cash value" and that the cost of the premiums was "probably not that much . . . ." [Dkt. No. 79 at 1:43:06-09.]

- 2 -

>    Bank's Counsel:  Well, I think that depends.  Keeping the policy in effect would be the preferred route to take from the bank's side of things.  But, if he decides, for whatever reason, that he cannot afford it, then the value of that should at least be taken into account.
>
>    Court:  And how do I value it?  That's a question I asked you at trial.

[Dkt. No. 109 at 16:00-16:30.]  Yet again, the focus was on the *value* of the key man life insurance as part of the bank's overall package of collateral.  [Dkt. No. 109 at 17:30-50.]  And, as at trial, the bank did not offer any reasonable explanation for how the Court should have valued the policy in determining the amount of the bank's allowed secured claim.  See id.

The bank's Rule 52(b) motion raises the question of the key man life insurance policy a third time and, in so doing, the bank cites section 1322 for the first time.  See [Dkt. No. 115 at 5.]  By its terms, Rule 52(b) provides that the Court "may" amend its findings or issue additional findings.  See Fed. R. Civ. P. 52(b).  A Rule 52(b) motion is committed to the sound discretion of the Court.  Frappier v. Countrywide Home Loans, Inc., 750 F.3d 91, 99 (1st Cir. 2014).

The Court recognizes that Bangor Savings Bank is unhappy with the Debtor's plan and with the confirmation of that plan.  However, the plan was confirmed after a trial.  The bank had a full and fair opportunity to challenge the features of the plan.  It chose to focus on collateral valuation.  Then, the bank moved for reconsideration.  The Court conducted a hearing on that motion, and the bank had a full and fair opportunity to persuade the Court that there were grounds for reconsideration of the confirmation order.  The bank did not carry its burden under Fed. R. Bankr. P. 9023 or Fed. R. Bankr. P. 9024. The bank has focused its arguments in this case on the value of its collateral and the determination of its secured claim.  Having done that, the bank cannot later turn this case into a referendum on the "disincorporation" strategy utilized by the debtor.  Simply put, at this juncture in this case, Rule 52(b) relief is not warranted.

- 4 -

Bangor Savings Bank's Motion for Findings of Fact and Conclusions of Law [Dkt. No. 115] is hereby denied.

Dated: July 28, 2017

Michael A. Fagone
United States Bankruptcy Judge
District of Maine